United States District Court
Southern District of Texas
**ENTERED**
August 26, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 7:15-CV-082 |
| § | |
| CHEETAH, INC., *et al*, § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER

Pending before the Court is Plaintiff Evanston Insurance Company's ("Plaintiff") motion for summary judgment.[1] Defendant Jorky, Inc. ("Jorky") and Defendant Jewel Transportation Enterprises, L.P. ("Jewel") (collectively "Defendants") timely filed a response,[2] to which Plaintiff filed a reply.[3] After considering the motion, response, reply, record, and relevant authorities, the Court **GRANTS** the motion for summary judgment.

### I.     Background

This is a declaratory judgment action arising from an underlying state court lawsuit brought by Pedro A. Garcia-Serna ("Mr. Serna") and Yessica Barrientos ("Ms. Barrientos"), both individually and as next friends of their minor child ("Minor Child"), (collectively, "the underlying plaintiffs") against Defendants.

On April 24, 2012, the underlying plaintiffs filed suit in state court against an entity named Wiggles Children's Rehab ("Wiggles") asserting various claims as the result of an alleged incident that occurred on June 29, 2010.[4] In the original underlying petition, the underlying

---

[1] Dkt. No. 33 ("Motion").
[2] Dkt. No. 34 ("Response").
[3] Dkt. No. 35 ("Reply").
[4] Dkt. No. 1, Exh. B ("Underlying Petition").

plaintiffs alleged Minor Child was a patient of Wiggles, that Wiggles operates a rehabilitation center located at 2011 East Griffin Parkway, Mission, Texas, and that Minor Child suffered injuries as a result of being left unattended in a locked transportation van owned and operated by Wiggles.[5]

Thereafter, on February 23, 2015, Plaintiff filed an original complaint against Defendant Cheetah, Inc. d/b/a Wiggles Children's Rehab ("Cheetah d/b/a Wiggles") asserting that it had previously issued insurance policies that may be relevant to the underlying suit, and seeking a declaratory judgment from the Court that it is not obligated to defend or indemnify Cheetah d/b/a Wiggles from or against any claims related to the underlying lawsuit.[6] Plaintiff subsequently filed an amended complaint on March 13, 2015 seeking the same relief.[7] Finally, on September 9, 2015, Plaintiff filed an unopposed motion to file its second amended complaint.[8] As basis for the motion, Plaintiff apprised the court that the underlying plaintiffs filed an amended petition in state court on July 9, 2015,[9] naming Defendants as the proper defendants in the state case. The Court granted the motion on September 29, 2015, and Plaintiff filed its second amended complaint against Cheetah d/b/a Wiggles, and added Defendants to this case.[10]

Plaintiff alleges that it issued to Cheetah d/b/a Wiggles a total of six insurance policies which were valid from various dates between October 8, 2009 and October 8, 2015 (collectively "the Policies").[11] Specifically, Plaintiff claims the first policy's coverage period extended from October 8, 2009 through October 8, 2010 ("Policy I"); the second from October 8, 2010 through October 8, 2011 ("Policy II"); the third from October 8, 2011 through October 8, 2012 ("Policy

---

[5] *Id*. at pp. 3–4.
[6] Dkt. No. 1
[7] Dkt. No. 6.
[8] Dkt. No. 14.
[9] Dkt. No. 33, Exh. B ("Second Amended Petition").
[10] Dkt. No. 16 ("Second Amended Complaint").
[11] *Id*. at ¶ 8.

III"); the fourth from October 8, 2012 through October 8, 2013 ("Policy IV"); the fifth from October 8, 2013 through October 8, 2014 ("Policy V"); and the sixth from October 8, 2014 through October 8, 2015 ("Policy VI").[12] Furthermore, the Policies contain identical liability insuring agreements.[13] Moreover, Plaintiff notes that "[b]y endorsement, the Policies identify [Defendants] each as an Additional Named Insured."[14] Finally, Plaintiff claims that Defendants did not timely provide notice of the claims made the basis of the underlying suit.[15] Thereafter, Defendants filed an answer denying Plaintiff's allegations that they did not timely provide notice to Plaintiff.[16]

On November 18, 2015, Cheetah d/b/a Wiggles filed a motion for summary judgment contesting the fact that despite not ever being sued in the underlying lawsuit, Plaintiff still named it as a Defendant in the instant action.[17] Consequently, on November 24, 2015, Plaintiff filed an unopposed motion to dismiss Cheetah d/b/a Wiggles,[18] which the Court granted on December 12, 2015.[19] Thereafter, Plaintiff filed the instant motion for summary judgment on May 6, 2016, and Defendants responded on May 25, 2016. At the party's request, the Court withheld a ruling on the motion for summary judgment pending potential resolution of the underlying suit. Plaintiff has now advised the Court that resolution of the underlying suit may not resolve this suit. Thus, the Court now addresses Plaintiff's motion for summary judgment.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[12] *Id*.
[13] *Id*. at ¶ 9.
[14] *Id*. at ¶ 8.
[15] *Id*. at ¶ 16.
[16] Dkt. No. 21 at ¶ 16.
[17] Dkt. No. 22.
[18] Dkt. No. 24.
[19] Dkt. No. 28.

law."[20]  A fact is "material" if its resolution could affect the outcome of the action,[21] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[22]  As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[23]

In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[24]  In this showing, "bald assertions of ultimate fact" are insufficient.[25]  Absent a sufficient showing, summary judgment is not warranted, the analysis is ended, and the non-movant need not defend the motion.[26]  On the other hand, the movant is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[27]  If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[28]  This demonstration must specifically indicate facts and their significance,[29] and cannot consist solely of "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[30]

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[31]  Thus, although the Court refrains from determinations of credibility and evidentiary weight, the Court nonetheless gives credence

---

[20] Fed. R. Civ. P. 56(a).
[21] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[22] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[24] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[25] *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978) (citation omitted).
[26] *See Celotex Corp.*, 477 U.S. at 323.
[27] *See id*. at 323–25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995).
[28] *See id*.
[29] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[30] *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[31] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).

to all evidence favoring the non-movant; on the other hand, regarding evidence that favors the movant, the Court gives credence to evidence that is uncontradicted and unimpeachable, but disregards evidence the jury is not required to believe.[32] Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[33] Parties may cite to any part of the record, or bring evidence in the motion and response.[34] By either method, parties need not proffer evidence in a form admissible at trial,[35] but must proffer evidence substantively admissible at trial.[36]

### III.   Discussion

As basis for the instant motion, Plaintiff argues that summary judgment is proper because Defendants did not provide notice of the incident which led to the underlying suit pursuant to Policy I's provisions.  Consequently, Plaintiff asserts that no coverage under the remaining policies exists pursuant to the terms of those policies because Defendants had knowledge "of the incident that gave rise to the Lawsuit prior to the inception" of those policies.  Indeed, Defendants' response to the instant motion concedes that the only disputed issue before the Court "is whether the Claim was 'first made' against [Defendants], and reported to [Plaintiff], during . . . [Policy I's] Policy Period[.]"  Therefore, the issue before the Court is whether Plaintiff has shown the absence of a genuine issue of material fact as to whether Defendants gave Plaintiff notice of the incident during Policy I's coverage period, i.e. made a claim. Thus, the Court first considers the relevant policy provisions.

---

[32] *See id.*
[33] *See* Fed.R.Civ. P. 56(e).
[34] *See* Fed. R. Civ. P. 56(c).
[35] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[36] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").

    *a.*    *Liability Coverage Under the Polices*

The Policies' liability coverage is divided into two parts; Professional Liability Coverage and General Liability Coverage. Under the terms of the Policies, the Professional Liability Coverage provision dictates that Plaintiff:

> shall pay on behalf of the Insured all sums . . . which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured *during the Policy Period* . . . and reported to the Company . . . provided:
>
>                                       \*\*\*
>
> B. prior to the effective date of this policy the Insured had *no knowledge* of such act, error or omission or any fact, circumstance, situation or incident which may lead a reasonable person in the Insured's position to conclude that a Claim was likely.[37]

Additionally, the Professional Liability Coverage provision of the Policies contains a discovery provision which states:

> If during the Policy Period, the Insured first becomes aware of a specific act, error or omission in Professional Services which may result in a Claim within the scope of the coverage for this Coverage Part, then the Insured may provide written notice[.] *If such written notice is received* by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such act, error, or omission . . . shall be deemed . . . to have been first made on the date on which such written notice is first received by the Company.[38]

In turn, the General Liability Coverage provision of the Policies state that Plaintiff:

> shall pay on behalf of the Insured all sums . . . which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured *during the Policy Period* . . . and reported to the Company . . . provided:
>
>                                       \*\*\*

---

[37] Dkt. No. 33, Exh. A-1 at p. 30.
[38] *Id*. at p. 34.

3. prior to the effective date of this policy the Insured had *no knowledge* of such Occurrence or any fact, circumstance, situation or incident which may lead a reasonable person in the Insured's position to conclude that a Claim was likely.[39]

Additionally, the General Liability Coverage provision of the Policies contains a discovery provision similar to the one found in the Professional Liability Coverage provision. It states in relevant part:

If during the Policy Period, the Insured first becomes aware of a specific Occurrence or offense which is reasonably expected to result in a Claim within the scope of the coverage of this policy, then the Insured may provide written notice to the Company . . . . *If such written notice is received* by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Occurrence or offense shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Company.[40]

Finally, the Court notes that under the terms of the Policies, a claim is defined as "a demand received by the Insured for monetary damages or services and shall include the service of suit or institution of arbitration proceedings against the Insured."[41] The Court now addresses whether Defendants complied with the aforementioned notice provisions.

b. *Notice of the Incident*

Here, Plaintiff has submitted summary judgment evidence through the sworn affidavit of Jeanette McDonough, Plaintiff's underwriting and claims service manager, indicating that the first time Plaintiff received notice from Defendants was February 18, 2015.[42] In turn, Defendants admit that they had "immediate" knowledge of the incident in question,[43] however, Defendants argue that they timely provided notice to Plaintiff under both discovery provisions of the Professional Liability Coverage and General Liability Coverage. Specifically, Defendants

---

[39] *Id*. at pp. 38-39.
[40] *Id*. at p. 49.
[41] *Id*. at p. 9.
[42] Dkt. No. 33, Exh. A at p. 2.
[43] Dkt. No. 33, Exh. C at p. 21.

point to the testimony of Mr. Julian Ybarra, Defendants' corporate president, to show that the day after the incident occurred, Defendants reported the incident to their insurance agent, Mr. Brian Lewis ("Mr. Lewis"), and that "[b]y reporting the Incident to Mr. Lewis, [Defendants] felt that [they were] discharging all of [their] obligations to report the Incident to [Plaintiff]."[44] However, it is undisputed that Mr. Lewis was Defendants' agent and not Plaintiff's agent. Therefore, Defendants cannot assert that they gave notice to Plaintiff by claiming they gave notice to their own agent.

In their attempt to defeat summary judgment, Defendants have attached a business record from their insurance agent, Mr. Lewis, to further support their position that notice was given. Specifically, Defendants have attached a photograph of a computer page identified as "BASIC LOSS INFORMATION." The attached image contains information regarding Policy I's effective dates and the named insured. More importantly, the image contains a section entitled "DESCRIPTION OF LOSS" which states "5 yr old child left in van at the Mission clinic. This is for record only for now. No complaints have been made by parents only that father was very upset. No injuries at this time."[45] Furthermore, the bottom of the image contains a comments section which notes "per Brian and insured this is for record only, go ahead and forward to company for record only."[46] It is Defendants' contention that the information in this photograph establishes "there is a material fact issue regarding whether [Plaintiff] received a notice of occurrence with respect to the Incident on or about July 8, 2010[.]"[47] The Court disagrees.

---

[44] Response at ¶ 18.
[45] Dkt. No. 34, Exh. 6.
[46] *Id.*
[47] Response at ¶ 23.

Contrary to Defendants' assertion that this computer image establishes "that [Mr. Lewis'] office reported the claim to [Plaintiff],"[48] the Court finds that Defendants evidence falls well short of establishing that Mr. Lewis' office did in fact forward notice to Plaintiff. As noted above, the comments contained in the image clearly state "*go ahead and forward* to company for record only."[49] While this language shows that Mr. Lewis' office intended to submit notice to Plaintiff of the incident in question, it also shows that the actual forwarding of notice had not yet been done. Furthermore, Defendants have failed to rebut Plaintiff's affidavit testimony indicating that the first time it received notice of a claim in regards to the underlying state court lawsuit was in February of 2015.

Defendants also submit a Notice of Occurrence Claim Form dated July 8, 2010 from the record of Mr. Lewis' insurance agency to support the position that Plaintiff received timely notice. While the July 8, 2010 form is the same type of form which Plaintiff actually received on February 2, 2015, the July 8, 2010 form itself does not indicate it was received by Plaintiff. There has been no summary judgment evidence that the form was ever sent to Plaintiff. The mere fact that the form is the same form eventually used does not raise a genuine issue of material fact that it was ever sent to Plaintiff. Furthermore, the form itself does not indicate any report to Plaintiff was actually made.[50]

Since there is no summary judgment evidence that Defendants gave notice pursuant to the terms of either Policy I's Professional Liability Coverage or General Liability Coverage provisions, and since Policy I requires notice to be given during the policy period, Defendants did not perform under the terms of the contract. Consequently, Defendants cannot claim

---

[48] Response at ¶ 19.
[49] Dkt. No. 34, Exh. 6.
[50] The only "reported to" name listed appears to be the same individual at Mr. Lewis' insurance agency that imported the screen shot information in Exhibit 6.

coverage under the plain terms of Policy I. Moreover, the evidence establishes that Defendants had immediate knowledge of the incident in question yet they did not disclose this information to Plaintiff as required under the terms of the remaining Policies. Thus, any claim for coverage regarding the incident in question is in contravention of the terms of the remaining Policies. Because Plaintiff has shown the absence of a genuine issue of material fact, the motion for summary judgment as to the duty to defend is granted.

    *c.*    *Duty to Indemnify*

In Texas, "the duty-to-indemnify . . . [is] justiciable after the underlying suit is concluded, unless 'the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'"[51] Here, Defendants' failure to perform under the terms of the Policies negates the possibility that Plaintiff will have to indemnify Defendants. Thus, the Court finds that Plaintiff has no duty to indemnify Defendants. Accordingly, the Court **GRANTS** summary judgments as to the duty to indemnify.

    **IV.**    **Holding**

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's motion for summary judgment in its entirety. A final judgment will issue separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 26th day of August, 2016.

                                                                                     Micaela Alvarez
                                                                                    United States District Judge

---

[51] *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir.2004) (quoting *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)).